# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVSION

| | |
|---|---|
| **TERESA WILLIAMS** and **STEPHEN VAUGHT,** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**SCOUT ENERGY MANAGEMENT, LLC,**<br><br>Defendant. | Case No. 3:24-cv-01588<br><br><br><br><br><u>**JURY TRIAL DEMANDED**</u> |

## CLASS ACTION COMPLAINT

Plaintiffs Teresa Williams and Stephen Vaught ("Plaintiffs") bring this Class Action Complaint, on behalf of themselves and all others similarly situated (the "Class Members"), against Defendant Scout Energy Management, LLC ("Defendant" or "Scout") alleging as follows, based upon information and belief, investigation of counsel, and personal knowledge of Plaintiffs.

## <u>NATURE OF CASE</u>

1.      This class action arises out of the recent targeted cyberattack and data breach ("Data Breach") on Scout's network that resulted in unauthorized access to the highly sensitive data[1] of Plaintiffs and at least 15,000 other Class Members.[2]

2.      Information compromised in the Data Breach includes personally identifying

---

[1] Scout Energy Management, LLC's Sample Breach Notice, www.mass.gov/doc/assigned-data-breach-number-2024-1156-scout-energy-management-llc/download (last visited June 20, 2024); *see also* https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage (last visited June 20, 2024).

[2] Office of the Maine Attorney General, Data Breach Notifications, https://www.maine.gov/agviewer /content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/37e70a76-42aa-462e-9a1f-70a 2999d9c97.html (last visited June 20, 2024).

information such as names and Social Security numbers ("Private Information").

3.      Plaintiffs bring this class action lawsuit on behalf of those similarly situated to address Defendant's failure to safeguard Plaintiffs' and Class Members' Private Information that Defendant collected and maintained, and for Defendant's failure to (1) provide timely and adequate notice to Plaintiffs and other Class Members that their Private Information had been subject to the unauthorized access of an unknown third party, (2) identify precisely what specific type of information was accessed; and (3) identify the threat actor.

4.      Defendant maintained the Private Information in a negligent and/or reckless manner. In particular, the Private Information was maintained on Defendant's computer system and network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiffs' and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a vulnerable condition. In addition, Scout and its employees failed to properly monitor the computer network and IT systems that housed the Private Information.

5.      Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

6.      As a result of the Data Breach, Plaintiffs and Class Members face a substantial risk of imminent and certainly impending harm. Plaintiffs and Class Members have and will

continue to suffer injuries associated with this risk, including but not limited to as a loss of uncompensated time, mitigation expenses, and anxiety over the misuse of their Private Information.

7.       Accordingly, Plaintiffs bring this action against Defendant seeking redress for its unlawful conduct, and asserting claims for: (i) negligence, (ii) breach of implied contract, and (iii) unjust enrichment. Through these claims, Plaintiffs seek damages in an amount to be proven at trial, as well as injunctive and other equitable relief, including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

## THE PARTIES

### *Plaintiff Teresa Williams*

8.       Plaintiff Teresa Williams is a natural person, resident, and a citizen of the State of New York. Plaintiff Williams has no intention of moving to a different state in the immediate future. Plaintiff Williams is acting on her own behalf and on behalf of others similarly situated. Defendant obtained and continues to maintain Plaintiff Williams's Private Information and owed her a legal duty and obligation to protect that Private Information from unauthorized access and disclosure. Plaintiff Williams would not have entrusted her Private Information to Defendant had she known that Defendant failed to maintain adequate data security. Plaintiff Williams's Private Information was compromised and disclosed as a result of Defendant's inadequate data security, which resulted in the Data Breach.

9.       Plaintiff Williams received a notice letter from Defendant dated June 14, 2024, stating that an unknown actor gained access to Scout's network on or about January 10, 2024 and accessed and acquitted certain files containing Private Information.  The notice letter noted that

Plaintiff Williams name and Social Security number were contained on the files accessed and acquired by the threat actor.

***Plaintiff Stephen Vaught***

10.    Plaintiff Stephen Vaught is a natural person, resident, and a citizen of the State of California. Plaintiff Vaught has no intention of moving to a different state in the immediate future. Plaintiff Vaught is acting on his own behalf and on behalf of others similarly situated. Defendant obtained and continues to maintain Plaintiff Vaught's Private Information and owed him a legal duty and obligation to protect that Private Information from unauthorized access and disclosure. Plaintiff Vaught would not have entrusted his Private Information to Defendant had he known that Defendant failed to maintain adequate data security. Plaintiff Vaught's Private Information was compromised and disclosed as a result of Defendant's inadequate data security, which resulted in the Data Breach.

11.    Plaintiff Vaught received a notice letter from Defendant dated June 14, 2024, stating that an unknown actor gained access to Scout's network on or about January 10, 2024, and accessed and acquitted certain files containing Private Information.  The notice letter noted that Plaintiff Vaught's name and Social Security number were contained on the files accessed and acquired by the threat actor.

***Defendant Scout Energy Management, LLC***

12.    Defendant Scout Energy Management, LLC is a limited liability company with its principal place of business located at 13800 Montfort Drive, Suite 100, Dallas, Texas 75240. Defendant is a citizen of Texas. The registered agent for service of process is Jon C. Piot, 13800 Montfort Drive, Suite 100, Dallas, Texas 75240. Upon information and belief, the members Scout Energy Management, LLC are Jon Piot, Todd Flott and John Baschab. Upon information and

4

belief and investigation of counsel, Jon Piot, Todd Flott and John Baschab are domiciled in the state of Texas, where public records indicate they reside and thus are citizens of Texas.

## JURISDICTION AND VENUE

13.    This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because Plaintiffs and at least one member of the putative Class, as defined below, are citizens of a different state than Defendant Scout, there are more than 100 putative class members, and the amount in controversy exceeds $5 million exclusive of interest and costs. Plaintiff is a citizen of New York.  Defendant is a citizen of Texas.

14.    This Court has general personal jurisdiction over Defendant Scout because Scout maintains its principal place of business in the Dallas Division of the Northern District of Texas at 13800 Montfort Drive, Dallas, Texas 75240, regularly conducts business in Texas, and has sufficient minimum contacts in Texas. Defendant intentionally availed itself of this jurisdiction by marketing and selling its services from Texas to many businesses nationwide.

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Scout's principal place of business is in the Dallas Division of the Northern District of Texas and a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## DEFENDANT'S BUSINESS

16.    Defendant Scout is an investment company with "a history of investing in upstream and midstream energy with a production-orientation"[3] and "private energy investment

---

[3] https://scoutep.com/ (last visited on June 20, 2024).

manager focused on the acquisition, operation and improvement of upstream energy assets and associated midstream energy infrastructure."[4]

17.     On information and belief, in the ordinary course of its business, Scout maintains the Private Information of investment customers like Plaintiffs, including but not limited to:

- Name, address, phone number and email address;

- Date of birth;

- Demographic information;

- Social Security number;

- Financial information;

- Photo identification;

- Employment information, and;

- Other information that Defendant may deem necessary to market, offer, and administer its investment products.

18.     Because of the highly sensitive and personal nature of the information Defendant acquires and stores with respect to customers, Scout, upon information and belief, promises to, among other things: comply with investment advisor industry standards related to data security and Private Information; inform consumers of its legal duties and comply with all federal and state laws protecting consumer Private Information; only use and release Private Information for reasons that relate to medical care and treatment; and provide adequate notice to individuals if their Private Information is disclosed without authorization.

19.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should

---

[4] https://scoutep.com/who-we-are/ (last visited on June 20, 2024).

have known that it was responsible for protecting Plaintiffs' and Class Members' Private Information from unauthorized disclosure.

20.     Plaintiffs and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

21.     Plaintiffs and the Class Members relied on Defendant to implement and follow adequate data security policies and protocols, to keep their Private Information confidential and securely maintained, to use such Private Information solely for investment services and purposes, and to prevent the unauthorized disclosures of the Private Information.

## THE CYBERATTACK

22.     On January 10, 2024, an unauthorized actor gained access to certain of Scout's computer systems.

23.     The type of Private Information accessed by the unauthorized actor in the Data Breach includes names and Social Security Numbers.

24.     As a result of the Data Breach, Scout took steps to secure the network, and launched an investigation to determine the nature and scope of the incident. In addition, the investigation revealed that at least thousands of individuals were victims of the Data Breach.

25.     Upon information and belief, and based on the type of cyberattack, along with public news reports, it is plausible and likely that Plaintiffs' Private Information was stolen in the Data Breach. Plaintiffs further believe their Private Information was likely subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of all cybercriminals.

26.     Even though the Data Breach occurred on January 10, 2024, Defendant failed to notify Plaintiffs and Class Members of the Data Breach until June 14, 2024 – over five months after the Data breach occurred.

7

27.    Defendant had obligations created by contract, industry standards, common law, and its own promises and representations made to Plaintiffs and Class Members to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

28.    Plaintiffs and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

29.    Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the investment industry preceding the date of the breach.

30.    In light of recent high profile data breaches at other investment companies, Defendant knew or should have known that their electronic records and consumers' Private Information would be targeted by cybercriminals and ransomware attack groups.

31.    In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[5] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[6]

32.    Indeed, cyberattacks on investment-related companies like Defendant have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack.[7]

---

[5] *See* 2021 Data Breach Annual Report (ITRC, Jan. 2022) (available at https://notified.idtheftcenter.org/s/), at 6.
[6] *Id.*
[7] *FBI, Secret Service Warn of Targeted*, Law360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited June 23, 2021).

33. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

**Defendant Fails to Comply with FTC Guidelines**

34. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

35. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[8] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[9]

36. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that service providers have implemented reasonable security measures.

---

[8] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Jan. 19, 2022).
[9] *Id*.

37.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

38.    These FTC enforcement actions include actions against investment companies and partners like Defendant.

39.    Defendant failed to properly implement basic data security practices.

40.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

41.    Defendant was at all times fully aware of its obligation to protect the Private Information of consumers. Defendant was also aware of the significant repercussions that would result from its failure to do so.

**<u>Defendant Fails to Comply with Industry Standards</u>**

42.    As shown above, experts studying cybersecurity routinely identify investment providers and partners as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

43.    Several best practices have been identified that at a minimum should be implemented by investment providers like Defendant, including but not limited to; educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-

malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

44.    Other best cybersecurity practices that are standard in the investment industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

45.    Upon information and belief Defendant failed to meet the minimum standards of one or more of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

46.    These foregoing frameworks are existing and applicable industry standards in the investment industry, and Defendant failed to comply with these accepted standards, thereby opening the door to the cyber incident and causing the data breach.

## DEFENDANT'S BREACH

47.    Defendant breached its obligations to Plaintiffs and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

   a.    Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

11

b.    Failing to adequately protect consumers' Private Information;

c.    Failing to properly monitor its own data security systems for existing intrusions;

d.    Failing to ensure that its vendors with access to its computer systems and data employed reasonable security procedures;

e.    Failing to train its employees in the proper handling of emails containing Private Information and maintain adequate email security practices;

f.    Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1)(i);

g.    Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

h.    Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act;

i.    Failing to adhere to industry standards for cybersecurity as discussed above; and

j.    Otherwise breaching its duties and obligations to protect Plaintiffs' and Class Members' Private Information.

48.    Defendant negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information by allowing cyberthieves to access Scout's computer network and systems which contained unsecured and unencrypted Private Information.

49. Accordingly, as outlined below, Plaintiffs and Class Members now face an increased risk of fraud and identity theft. In addition, Plaintiffs and the Class Members also lost the benefit of the bargain they made with Defendant.

### Cyberattacks and Data Breaches Cause Disruption and Put Consumers at an Increased Risk of Fraud and Identity Theft

50. Cyberattacks and data breaches at investment companies and partner companies like Defendant are especially problematic because they can negatively impact the overall daily lives of individuals affected by the attack.

51. The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft face "substantial costs and uncompensated time to repair the damage to their good name and credit record."[10]

52. That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal personally identifiable information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims, take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such

---

[10] *See* U.S. Gov. Accounting Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (2007). Available at https://www.gao.gov/new.items/d07737.pdf.

as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

53.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[11]

54.     Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

55.     Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

56.     Moreover, theft of Private Information is also gravely serious because Private Information is an extremely valuable property right.[12]

---

[11] *See IdentityTheft.gov*, Federal Trade Commission, https://www.identitytheft.gov/Steps (last visited Jan. 19, 2022).
[12] *See, e.g.,* John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable*

57.     Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

58.     It must also be noted there may be a substantial time lag – measured in years -- between when harm occurs and when it is discovered, and also between when Private Information and/or financial information is stolen and when it is used.

59.     According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report, at p. 29.

60.     Private Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

61.     There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future.

62.     Thus, Plaintiffs and Class Members must vigilantly monitor their financial accounts for many years to come.

---

*Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

63.     Private Information can sell for as much as $363 per record according to the Infosec Institute. PII is particularly valuable because criminals can use it to target victims with frauds and scams. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

64.     For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines.[13] Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security Numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[14] Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

65.     Moreover, it is not an easy task to change or cancel a stolen Social Security number.

66.     An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[15]

---

[13] *Identity Theft and Your Social Security Number*, Social Security Administration (2018) at 1. Available at https://www.ssa.gov/pubs/EN-05-10064.pdf (Jan. 19, 2022).
[14] *Id* at 4.
[15] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft.

67.     This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[16]

68.     For this reason, Defendant knew or should have known about these dangers and strengthened its data and email handling systems accordingly. Defendant was put on notice of the substantial and foreseeable risk of harm from a data breach, yet Scout failed to properly prepare for that risk.

**Plaintiffs' and Class Members' Damages**

69.     To date, Defendant has done absolutely nothing to provide Plaintiffs and the Class Members with relief for the damages they have suffered as a result of the Data Breach.

70.     Defendant has merely offered Plaintiffs and Class Members minimal fraud and identity monitoring services, but this does nothing to compensate them for damages incurred and time spent dealing with the Data Breach.

71.     Plaintiffs and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

72.     Plaintiffs' and Class Members' names and Social Security Numbers were compromised in the Data Breach and are now in the hands of the cybercriminals who accessed Defendant's computer system.

---

[16] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, Computer World (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

73.     Since being notified of the Data Breach, Plaintiffs have spent time dealing with the impact of the Data Breach, valuable time Plaintiffs otherwise would have spent on other activities, including but not limited to work and/or recreation.

74.     Due to the Data Breach, Plaintiffs anticipate spending considerable time and effort on an ongoing basis to try to mitigate and address harms caused by the Data Breach. This includes changing passwords, cancelling credit and debit cards, and monitoring their accounts for fraudulent activity.

75.     Plaintiffs' and Class Members' Private Information was compromised as a direct and proximate result of the Data Breach.

76.     As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have been placed at a present, imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

77.     As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have been forced to expend time dealing with the effects of the Data Breach.

78.     Plaintiffs and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

79.     Plaintiffs and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiffs and Class Members. Plaintiff Williams has already experienced various phishing attempts by telephone and through electronic mail.

80.    Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

81.    Plaintiffs and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

82.    Plaintiffs and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiffs and Class Members overpaid for a service that was intended to be accompanied by adequate data security that complied with industry standards but was not. Part of the price Plaintiffs and Class Members paid to Defendant was intended to be used by Defendant to fund adequate security of Scout's computer system and Plaintiffs' and Class Members' Private Information. Thus, Plaintiffs and the Class Members did not get what they paid for and agreed to.

83.    Plaintiffs and Class Members have spent and will continue to spend significant amounts of time monitoring their sensitive information for misuse.

84.    Plaintiffs and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

   a.    Reviewing and monitoring sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

   b.    Purchasing credit monitoring and identity theft prevention;

   c.    Placing "freezes" and "alerts" with reporting agencies;

      d.      Spending time on the phone with or at financial institutions and/or government agencies to dispute unauthorized and fraudulent activity in their name;

      e.      Contacting financial institutions and closing or modifying financial accounts; and,

      f.      Closely reviewing and monitoring Social Security Number, investment accounts, bank accounts, and credit reports for unauthorized activity for years to come.

85.     Moreover, Plaintiffs and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing Private Information is not accessible online and that access to such data is password protected.

86.     Further, as a result of Defendant's conduct, Plaintiffs and Class Members are forced to live with the anxiety that their Private Information—which contains the most intimate details about a person's life, including what ailments they suffer, whether physical or mental—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

87.     As a direct and proximate result of Defendant's actions and inactions, Plaintiffs and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at a present and increased risk of future harm.

**<u>Plaintiff Williams' Experience</u>**

88.     Plaintiff Williams utilized Scout's investment services. Plaintiff shared her Private Information with Scout in conjunction with receiving investment services from Scout. Scout required Plaintiff to provide her Private Information in order to receive Scout's services.

89.     Plaintiff Williams entrusted her Private Information to Scout with the reasonable expectation and understanding that Scout would implement and maintain at least reasonable industry standard data security measures to protect Private Information from unauthorized access and exfiltration. Plaintiff Williams also understood that Defendant would timely notify her of any data security incidents related to her Private Information. Plaintiff would not have entrusted Private Information to Scout services had she known that Scout would not honor its implicit and explicit promises to implement and maintain reasonable data security measures.

90.     Months after Scout experienced the Data Breach, Plaintiff Williams received a letter from Scout, dated June 14, 2022, notifying her that her Private Information had been improperly accessed and/or obtained by unauthorized third parties. The notice indicated that Plaintiff Williams' Private Information, including her name and Social Security number were accessed in the Data Breach.

91.     As a result of the Data Breach, Plaintiff Williams made reasonable efforts to mitigate the impact of the Data Breach after receiving the data breach notification letter, including but not limited to researching the Data Breach, reviewing financial account information, and reviewing her credit information.

92.     Plaintiff Williams has spent multiple hours attempting to mitigate the effects of the breach and safeguard herself from its consequences. She will continue to spend valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation.

93.    Plaintiff Williams suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her Private Information, a form of property that Scout obtained from Plaintiff Williams; (b) violation of her privacy rights; (c) the likely theft of her Private Information; and (d) imminent and impending injury arising from the increased risk of identity theft and fraud.

94.    Plaintiff Williams has also suffered emotional distress as a result of the release of her Private Information, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her Private Information for purposes of identity theft and fraud. Plaintiff Williams is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach. Plaintiff Williams also has suffered anxiety about unauthorized parties viewing, using, and/or publishing sensitive information.

95.    As a result of the Data Breach, Plaintiff Williams anticipates spending considerable time, effort, and potentially money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff Williams will continue to be at present, imminent, and continued increased risk of identity theft and fraud in perpetuity.

**Plaintiff Vaught's Experience**

96.    Plaintiff Vaught utilized Scout's investment services by investing in mineral royalties. Plaintiff shared his Private Information with Scout in conjunction with receiving investment services from Scout. Scout required Plaintiff Vaught to provide his Private Information in order to receive Scout's services.

97.    Plaintiff Vaught entrusted his Private Information to Scout with the reasonable expectation and understanding that Scout would implement and maintain at least reasonable

industry standard data security measures to protect Private Information from unauthorized access and exfiltration. Plaintiff Vaught also understood that Defendant would timely notify him of any data security incidents related to his Private Information. Plaintiff Vaught would not have entrusted Private Information to Scout services had he known that Scout would not honor its implicit and explicit promises to implement and maintain reasonable data security measures.

98.     Months after Scout experienced the Data Breach, Plaintiff Vaught received a letter from Scout, dated June 14, 2022, notifying him that his Private Information had been improperly accessed and/or obtained by unauthorized third parties. The notice indicated that Plaintiff Vaught's Private Information, including his name and Social Security number were accessed in the Data Breach.

99.     As a result of the Data Breach, Plaintiff Vaught made reasonable efforts to mitigate the impact of the Data Breach after receiving the data breach notification letter, including but not limited to researching the Data Breach, reviewing financial account information, and reviewing his credit information.

100.    Plaintiff Vaught has spent multiple hours attempting to mitigate the effects of the breach and safeguard himself from its consequences. He will continue to spend valuable time he otherwise would have spent on other activities, including but not limited to work and/or recreation.

101.    Plaintiff Vaught suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his Private Information, a form of property that Scout obtained from Plaintiff Vaught; (b) violation of his privacy rights; (c) the likely theft of his Private Information; and (d) imminent and impending injury arising from the increased risk of identity theft and fraud.

102.    Plaintiff Vaught has also suffered emotional distress as a result of the release of his Private Information, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using his Private Information for purposes of identity theft and fraud. Plaintiff Vaught is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach. Plaintiff Vaught also has suffered anxiety about unauthorized parties viewing, using, and/or publishing sensitive information.

103.    As a result of the Data Breach, Plaintiff Vaught anticipates spending considerable time, effort, and potentially money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff Vaught will continue to be at present, imminent, and continued increased risk of identity theft and fraud in perpetuity.

## CLASS ACTION ALLEGATIONS

104.    Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated ("the Class").

105.    Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

> **All persons Scout identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach (the "Class").**

106.    Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and Members of their staff.

107.    Plaintiffs reserve the right to amend or modify the Class definition or create additional subclasses as this case progresses.

108.    <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them is impracticable. Defendant disclosed to the Maine Attorney General that the Private Information of over 15,000 Class Members was accessed in Data Breach.

109.    <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.    Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' Private Information;

    b.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c.    Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

    d.    Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

    e.    Whether Defendant owed a duty to Class Members to safeguard their Private Information;

    f.    Whether Defendant breached its duty to Class Members to safeguard their Private Information;

    g.    Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

h.    Whether Defendant should have discovered the Data Breach sooner;

i.    Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

j.    Whether Defendant's conduct was negligent;

k.    Whether Defendant breach implied contracts with Plaintiffs and Class Members;

l.    Whether Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiffs and Class Members;

m.    Whether Defendant failed to provide notice of the Data Breach in a timely manner, and;

n.    Whether Plaintiffs and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

110.    Typicality. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' information, like that of every other Class Member, was compromised in the Data Breach.

111.    Adequacy of Representation. Plaintiffs will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions.

112.    Predominance. Defendant has engaged in a common course of conduct toward Plaintiffs and Class Members, in that all the Plaintiffs' and Class Members' data was stored on the same computer system and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized

issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

113.    <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

114.    Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

115.    Likewise, particular issues under Rule 42(d)(l) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

      a.    Whether Defendant failed to timely notify the public of the Data Breach;

      b.    Whether Defendant owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

c.      Whether Defendant's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

d.      Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

e.      Whether Defendant failed to take commercially reasonable steps to safeguard consumer Private Information; and

f.      Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

116.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## CAUSES OF ACTION

### COUNT I
### Negligence
### (On Behalf of Plaintiffs and the Class)

117.    Plaintiffs re-allege and incorporate by reference all other paragraphs in the Complaint as if fully set forth herein.

118.    By collecting and storing the Private Information of Plaintiffs and Class Members, this data in its computer system and network, and sharing it and using it for commercial gain, Defendant owed a duty of care to use reasonable means to secure and safeguard its computer system—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in

28

a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

119.    Defendant owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

120.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and consumers, which is recognized by laws and regulations as well as common law. Defendant was in a superior position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

121.    In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

122.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

123.    Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

    a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b.     Failing to adequately monitor the security of its networks and systems;

c.     Failing to ensure that its email system had plans in place to maintain reasonable data security safeguards;

d.     Failing to have in place mitigation policies and procedures;

e.     Allowing unauthorized access to Class Members' Private Information;

f.     Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

g.     Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

124.    It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the investment industry.

125.    It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

126.    Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

127.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.,* (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

128.    Pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs and Class Members' Private Information.

129.    Defendant breached its duties to Plaintiffs and Class Members under the Federal Trade Commission Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

130.    Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

131.    But for Defendant's wrongful and negligent breach of their duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members would not have been injured.

132.    The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that it was failing to meet its duties, and that Defendant's breach would cause Plaintiffs and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

133.    As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

## COUNT II
### Breach of Implied Contract
### (On behalf of the Plaintiffs and the Class)

134.    Plaintiffs incorporate by reference all other allegations in the Complaint as if fully set forth here.

135.    Plaintiffs and the Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiffs and Class Members that their information had been breached and compromised.

136.    Plaintiffs and the Class were required to and delivered their Private Information to Defendant as part of the process of obtaining services provided by Defendant. Plaintiffs and Class Members paid money, or money was paid on their behalf, to Defendant in exchange for services.

137.    Defendant Scout solicited, offered, and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiffs and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

138.    Defendant accepted possession of Plaintiffs' and Class Members' Private Information for the purpose of providing services or Plaintiffs and Class Members.

139.    In accepting such information and payment for services, Plaintiffs and the other Class Members entered into an implied contract with Defendant whereby Defendant became obligated to reasonably safeguard Plaintiffs' and the other Class Members' Private Information.

140.    In delivering their Private Information to Defendant and providing paying for investment services, Plaintiffs and Class Members intended and understood that Defendant would adequately safeguard the data as part of that service.

141.    The implied promise of confidentiality includes consideration beyond those pre-existing general duties owed under state or federal regulations. The additional consideration included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines on data security.

142.    The implied promises include but are not limited to: (1) taking steps to ensure that any agents who are granted access to Private Information also protect the confidentiality of that data; (2) restricting access to qualified and trained agents; (3) designing and implementing appropriate retention policies to protect the information against criminal data breaches; (4) applying or requiring proper encryption; (5) multifactor authentication for access; and (6) other steps to protect against foreseeable data breaches.

143.    Plaintiffs and the Class Members would not have entrusted their Private Information to Defendant in the absence of such an implied contract.

144.    Had Defendant disclosed to Plaintiffs and the Class that it did not have adequate computer systems and security practices to secure sensitive data, Plaintiffs and the other Class Members would not have provided their Sensitive Information to Defendant.

145.    Defendant recognized that Plaintiffs' and Class Members' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiffs and the other Class Members.

146.    Plaintiffs and the other Class Members fully performed their obligations under the implied contracts with Defendant.

147.    Defendant breached the implied contract with Plaintiffs and the other Class Members by failing to take reasonable measures to safeguard their Private Information as described herein.

148.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the other Class Members suffered and will continue to suffer damages in an amount to be proven at trial.

**COUNT III**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

149.    Plaintiffs incorporate by reference all other allegations in the Complaint as if fully set forth here.

150.    This count is pleaded in the alternative to breach of contract.

151.    Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including payments made by or on behalf of Plaintiffs and the Class Members and from investment companies.

152.    As such, a portion of the payments made by or on behalf of Plaintiffs and the Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

153.    Plaintiffs and Class Members conferred a monetary benefit on Defendant. Specifically, they purchased goods and services from Defendant and/or its agents and in so doing provided Defendant with their Private Information. In exchange, Plaintiffs and Class Members should have received from Defendant the goods and services that were the subject of the transaction and have their Private Information protected with adequate data security.

154.    Defendant knew that Plaintiffs and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiffs and Class Members for business purposes.

155.    Plaintiffs and Class Members conferred a monetary benefit on Defendant, by paying Defendant as part of Scout's rendering of services, a portion of which was to have been used for data security measures to secure Plaintiffs' and Class Members' Private Information, and by providing Defendant with their valuable Private Information.

156.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Private Information. Instead of

providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid their data security obligations at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

157.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiffs and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

158.    Defendant acquired the monetary benefit and Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

159.    If Plaintiffs and Class Members knew that Defendant had not secured their Private l Information, they would not have agreed to provide their Private Information to Defendant.

160.    Plaintiffs and Class Members have no adequate remedy at law.

161.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remain in Defendant's possession and is

subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect Private Information in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

162.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

163.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiffs and Class Members overpaid for Defendant's services.

**COUNT IV**
**Cal. Civ. Code § 1798.100, et seq. ("CCPA")**
**(On Behalf of Plaintiff Vaught and the California Subclass)**

164.    Plaintiff Vaught incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

165.    Defendant violated section 1798.150(a) of the CCPA, Cal. Civ. Code § 1798.150(a), by failing to prevent the Personal Information of Plaintiff Vaught and the California Subclass from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant' violations of their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the Private Information.

166.    The non-redacted and non-encrypted Personal Information of Plaintiff Vaught and the California Subclass was subjected to unauthorized access and exfiltration, theft, or disclosure as a direct and proximate result of Defendant' violations of their duty under the CCPA.

167.    Plaintiff Vaught and the California Subclass lost money or property, including but not limited to the loss of legally protected interest in the confidentiality and privacy of their Personal Information, nominal damages, and additional losses as a direct and proximate result of Defendant' acts described above.

168.    Defendant knew, or should have known, that their network computer systems and data security practices were inadequate to safeguard the Private Information and that the risk of a data breach or theft was highly likely. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the Private Information, such as properly encrypting the Personal Information so in the event of a data breach an unauthorized third party cannot read the Private Information. As a result of the failure to implement reasonable security procedures and practices, the Private Information of Plaintiff Vaught and members of the California Subclass was exposed.

169.    Defendant is an entity organized for the financial benefit of its owners and collect PII as defined in Cal. Civ. Code § 1798.140. Indeed, Defendant's website includes a page discussing the CCPA and the rights of its customers under the CCPA[25]

170.    Plaintiff Vaught and the California Subclass seek injunctive or other equitable relief to ensure that Defendant hereinafter adequately safeguards the Private Information by implementing reasonable security procedures and practices. This relief is important because Defendant still holds the Private Information related to Plaintiff Vaught and the California Subclass. Plaintiff Vaught and the California Subclass have an interest in ensuring that their Private Information is reasonably protected.

171.    At this time, Plaintiff Vaught and California Class Members seek only actual pecuniary damages suffered as a result of Defendant's violations of the CCPA, injunctive and

declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and any other relief the court deems proper.

172.    Concurrently with the filing of this Complaint, Plaintiff Vaught is providing written notice to Defendant identifying the specific provisions of this title he alleges it has violated. (*See* Exhibit A). If within 30 days of Plaintiff Vaught's written notice to Defendant it fails to "actually cure" its violations of Cal. Civ. Code § 1798.150(a) and provide "an express written statement that the violations have been cured and that no further violations shall occur," Plaintiff Vaught will amend this complaint to also seek the greater of statutory damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident, or actual damages, whichever is greater. *See* Cal. Civ. Code § 1798.150(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

a)    For an Order certifying this action as a Class action and appointing Plaintiffs as Class Representative and his counsel as Class Counsel;

b)    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiffs and Class Members;

c)    For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

d)    For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

e)        Ordering Defendant to pay for not less than five years of three-bureau credit monitoring services for Plaintiffs and the Class;

f)        For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g)        For an award of punitive damages, as allowable by law;

h)        For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

i)        Pre- and post-judgment interest on any amounts awarded; and,

j)        Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMANDED

Under Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated: June 25, 2024

*/s/ Joe Kendall*
Joe Kendall
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
Phone:214-744-3000
Fax: 214-744-3015
jkendall@kendalllawgroup.com

Gary M. Klinger (*pro hac vice* forthcoming)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866-252-0878
Fax: 865-522-0049
gklinger@milberg.com

*Counsel for Plaintiffs and the Putative Class*

39